All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning and welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christen. I'm one of the judges on the circuit. My chambers are in Anchorage, Alaska. I'm sitting this week with two wonderful colleagues. Judge Tallman is with me on my right, your left. His chambers are in Coeur d'Alene, Idaho. And we're delighted to thank and welcome Judge Block, who's out again as a volunteer to help us out with our docket. We appreciate his help very much. I just have a little bit of housekeeping I need to do before we start with the arguments this morning. Madam Clerk, we're going to submit without argument Case No. 16-71160, Pan v. Garland and Sarwar v. Garland, which is 18-71479 and Vega Molina v. Garland, which is 21-70382 and Sapoff v. HSBC Bank, which there's two case numbers, 20-36031 and 21-35017. And with that, we'll go to the first case on the oral argument calendar, which is Jacobs v. Taylor, 21-35118. Counsel, could you give me one minute to catch up with you? I have my notes here. Okay. I'm ready when you are. Thank you. May it please the Court and Counsel, with the Court's permission, I'd like to reserve two minutes for rebuttal. You bet. Thank you. Troy Jacobs has lesions on his brain. Every day, he forgets he needs to take insulin. He forgets what cell number he lives in. By lunch, he can't remember what he's had for breakfast. No matter how many times he's done it, he can't remember how to unload a dishwasher. Under the totality of the circumstances, Mr. Jacobs' brain lesions, causing a near-complete loss of short-term memory, were the but-for cause for his filing delay. And do we know that that continued during the entire period of time that he's asking for equitable tolling? We hear these kinds of symptoms in Social Security cases, but I've learned that you have to look at the longitudinal record. For example, do we know at the time he entered the guilty plea in Multnomah Circuit Court whether or not there was a question as to his competency to plead or any kind of a finding on the record as to his mental condition? So I'll answer both your questions. Okay. In terms of continuity, Mr. Jacobs was evaluated in 2007 when the brain injury occurred. He undoubtedly had the short-term memory loss then. He was evaluated in 2009 for purposes of Social Security. He undoubtedly had the short-term memory loss then. Hold on. Before you go farther, was there a difference between the short-term memory loss in 2007 and as measured in 2009? There were marginal differences. Was it progressively worse or better? Can we say that? It might have been a smidge better. Okay. In 2012 was when he was evaluated by Dr. Bryan who decided he was malingering. As Dr. Watson states in his report, the malingering scales don't work on a person with short-term amnesia. So we know in 2007, 2009, and 2016 and 2017 when he was evaluated by Dr. Watson that his amnesia was, as Dr. Watson said, near total. And when did he begin using his system of lists? I'm not sure the record's clear on when he began using his system of lists, but what the record is clear is that the system of lists doesn't do much for him. He still wakes up every morning and can't remember he needs to take a life-saving medication. But that would depend on whether or not he put it on the list, right? My understanding was that he compensates for his mental deficiencies by using lists to remind him to do things. But, of course, that would require him first to write something on the list. It would require him to write something on the list. It would require him to remember the list. It would require him to read the list and then take all the steps needed to file a habeas petition without ever once getting distracted. Was there any evidence in the record as to whether or not he filed any other pleadings or grievances, either with state courts or the prison, during the time he was incarcerated? He did not file any other pleadings. I'm not aware of any grievances he filed while incarcerated. Well, he told his lawyer to appeal. That much he did, correct? Correct. What we know is that when he began speaking about his case with Mr. Moore, the cellmate, Mr. Moore said, well, you should file a habeas petition. Mr. Moore then wrote a habeas petition, and Mr. Jacobs copied that. In that habeas petition, he said he'd asked his lawyer to appeal. That's true. But he could remember that. It's not clear to me if he's remembering that or if Mr. Moore is telling him that. Well, how would Moore know that he told his lawyer to file an appeal? He may not have. But I think the larger point is that as both Dr. Tilson and Dr. Watson say, he retains fragments of vague memories. But you can't take a fragment of his memory and impute to him the ability to go through the entire habeas filing process. Was his defense counsel ever interviewed? I do not believe his defense counsel has been interviewed. You haven't talked to him? I haven't. You don't know what he would say? I do not know what he would say. The focus was on the petition was filed, the state raised procedural defenses, and that is where the litigation went. Okay. Counsel, I have at ER 3839 that Gary Claussen, another inmate, said he was using lists sometime between 2015 and 2017. His habeas petition, I think, was to be filed in 2014. Correct. Do you have any indication in the record that he was using lists before 2015? I don't. Do we have anything that tells us whether or not his condition is progressive? I don't believe his condition is progressive, but it may get worse with age. I don't know. But it is certainly continuous. He occasionally remembers fragments of memory, but his memory, he is still profoundly disabled. Okay. So then if you could go back. I couldn't find it either, so those are not trick questions. If I was missing it, I'd want to know. So if you could go back then, it seems to me that the district court didn't challenge or didn't have a problem with Bill Step 1. So we're talking about Bill Step 2, I believe. Opposing counsel can correct me if I'm wrong about that. And it seems to me that the district court was very influenced by this sentencing and what he was able to recall as sentencing. So can you tell me, that's my read of the record, and you both have an opportunity to respond to that. Can you tell me whether or not he was counseled at sentencing? Well, what I can tell you is that it's highly likely that those two crucial facts to his case, that it was a toy gun and that the robberies were a result of drug use, were likely something he discussed with his attorney. Right, but do we have any? That's what I'm trying to figure out. Was a lawyer there? Was a lawyer sitting next to him? Do we know if the lawyer was answering, helping him? Do we have anything about that? We know the lawyer was in court with him, and I can presume the lawyer met with him prior to pleading guilty. Right, but the Neurosoc report indicates that his memory was limited to about two minutes. So he would have had to meet with his lawyer immediately before these questions were asked, I think, if I'm understanding this record. We're kind of groping with what we've got to work with here. He was able to recount a lot. So what do we do with that? What I think we do with that is that, as his mother states at one point, he can occasionally, and this is consistent with the report, his amnesia is not total. He can occasionally remember fragments of information, and his mother said important facts. For example, he remembers his uncle died. Doesn't know when, doesn't know anything else about that, just knows that his uncle died. And it may be, to the extent that this wasn't information he was remembering a conversation he had just shortly before, that these two very central facts to his case were part of those fragments he remembered. But it's sort of like when my grandfather was dying of Alzheimer's, and he couldn't remember his wife and children. He could remember his high school fight song, though. And it would have been wrong for me to say, well, you can remember your high school fight song. You must be able to remember your wife and children. It's the same way with Mr. Jacobs. These fragments don't imply he has a greater capacity. There was, however, was there not a finding on the record in Multnomah County at the time of the plea that the plea was knowingly and voluntarily entered? The colloquy was, and I see I'm running out of time, the colloquy was extraordinarily short. I agree. There has to be the finding. Wasn't there? I think there was. It was set on the record. There was no exploration of that. And that did not follow any kind of a psychiatric evaluation as to his competency. That had not occurred prior to the time of his state court plea. Other than his lawyer had retained this gentleman, Dr. Bryan, who used the malingering test that he should not have used and said he's malingering. But there was no court review or analysis of his mental competency. And the defense lawyer didn't push it any further because of what he got back from his experts. That's correct. You started to make a, we'll give you two more minutes when you come back because we've used up so much of your time, but you started to make another point that I think one of us derailed you, which is that even if he has something on the list, this is a complex task. He would have to remember more than just to do the habeas petition. He'd have to know what to put in it. Yes. He would have to know how to identify the grounds, how to articulate the grounds. If he went to the law library, he'd have to remember that he was, when he got there, why he was there. If at any point he forgets something, it's over. Everything starts over. In the context of monitoring somebody, he has to be able to monitor the assistance. The problem is as soon as he asks for it. What do you mean monitor the assistance? Under bills, when assistance is available, one of the things he has to be able to do is his brain injury cannot interfere with his ability to monitor the assistance. I understand. You're using in the context of bills. I got you. Okay, I wanted to make sure I understood that argument, and we've used up all your time now. So when you come back, we'll put two minutes on the clock. Thank you. You can plan on that, please, while you're listening to opposing counsel. May it please the Court and counsel, John Zunkel, the Corsi for the State. I want to be clear about what we dispute and what we don't dispute. The district court found that petitioner's memory deficits prevented him personally from being able to independently complete his habeas petition, and we don't dispute that part, the first factor of the bill. So is that your response to the complex task argument? Well, I mean, I think our response is that he has to – I mean, what the district court found was that he didn't utilize the help that was available to him, and they didn't show that he was trying to utilize help throughout the entire course of the limitations period. And so he didn't have to be able to actually file the habeas petition. He just needed to show that he could have – was doing something to be reasonably diligent to try to get help and support to file the habeas petition, whether that be introduce evidence that he asked other cellmates or from them. We're not expecting him to remember what he said to his cellmates, but he introduced declarations from a host of other people that have been incarcerated with him. And he said, oh, the petitioner asked me, I was his cellmate, and I couldn't help him, or a secretary from the law library, the petitioner came in asking to try to get help for the petition, and he kept forgetting. We kept going over the same thing. Anything like that would have been evidence to show that he would have been diligent throughout the limitations period. Let me ask you a couple of questions. There's no question that he has suffered from a mental impairment. You don't question that. So under bills, then, we have to make a determination whether because of that mental impairment, it was impossible to timely file under the totality of the circumstances. I think that's something which we have to review de novo, correct? So the impact of the district court's findings necessarily do not excuse us for making a de novo determination under the totality of the circumstances, I believe, right? So we just hear that there's a lot of circumstances here, back and forth, maybe yes, maybe no. He was okay here. He wasn't okay then there. Don't you think that maybe as a practical matter, under the totality of the circumstances, which is so commingled or so debatable, that maybe the right decision here is to give this guy an opportunity to pursue habeas relief? I mean, if the court wants to do that, that's fine. But I think that the issue for bills and the second factor is whether he utilized help available to him. And we know that he has utilized help in other ways, right? Like his mother said that she helped him file his social security disability benefits application in 2011, and we know that he had other ways of coping, like his LIS. And we know from the record that he approached his cellmate to help with the habeas petition, like at ER 43. When did that cellmate become his cellmate? I believe that was in February of 2016. There's a declaration that's not in the excerpt of the record that's referenced in one of the expert opinion on the psychologist. And the only time that petitioner lived with that cellmate was from February to April of 2016, and then he filed his habeas petition in March of 2016. It was due in 2014? It was due in February of 2014. Okay, and so I think that I've been trying to do what we're all trying to do, which is figure out when this became a problem. And memory problems began in 2007, and then opposing counsel just went through the dates we have for the subsequent analyses of that. And I don't think those are contested. And I have this little bit of a finding here about Gary Claussen saying that he was using LIS, his LIS system, in 2015 and 2017. Do you think there's anything in the record that tells me whether he had a LIS system prior to that time? I'm not aware of anything else in the record that says anything before that time. I mean, what we do know is that he seemed to be aware that he had memory issues. I think that's clear. And so to the extent that he started, like we don't know when he started using that LIS system, but to the extent that he knew that he had a memory system or a memory issue, what Bills requires is that he's reasonably diligent, you know, considering his... Right. And that's your thesis, really, is that he didn't use, and we keep derailing you, but you keep valiantly trying to tell us that your position is that he didn't use what was available to him. I don't know that he had a LIS system in 2014. What is your position, sir, about what he had available to him in 2014 that he didn't use? I don't think we know anything about, I mean, apart from maybe his mom being a resource to help, you know. And I think the other fact that we know... So hang on, so if you could just figure... So is your position then that he just didn't meet his burden of proof? Is that your position? Yeah, he did not meet his burden of proof of showing throughout the entire, you know, from February of 2014 until the time that he filed that he was being reasonably diligent, which is what this court in Smith says, that you have to look at the entire limitations, you know, from the time the limitations period began until the time that it ended, and was he being reasonably diligent. Yes, but it does matter to me on my scorecard, so if you could just bear with me. It's not so much that you think that he failed... Well, it is. It's not so much that you think there is the indication in the record that he had other tools available to him, you just think he failed to meet his burden of proving that he used what he had. That's right. Okay. Yeah. You know, and I want to make sure that we're clear that, like, I mean, the way that I read the record about the cellmate is that he, Petitioner, approached his cellmate, and this is on AR-43 from the Federal Public Defender's investigator, that he approached the cellmate and asked for help with his case, and at that point the cellmate offered to help file the petition and work with him. So, you know, there's... And when he did that, like, he did that seemingly in February or March of 2016, and through doing that, through working with his cellmate, he was able to recall a whole host of details about his case. You know, like his plea petition, or his previous petition, says that, you know, he asked, he implored trial counsel to file an appeal. He called the trial counsel to see if the appeal was being filed. He wrote letters, and trial counsel did not respond. There's, you know, things in direct quotes from what trial counsel said that he was going to do to file an appeal. So all of those things together show that when he did actually ask for help, he was able to file a habeas petition. And so, you know, and those facts show that, you know, if he would have asked for help earlier, or shown that he had tried to ask for help earlier, that that would have been enough. But why do you think he waited 3 years before he did it? You know, I don't know. I mean, you know, it could be that he didn't appreciate that habeas was, you know, open to him. It could be that he, you know, just didn't think that he had a claim because, you know, his underlying habeas claim is about, you know, that he didn't get a direct appeal after a plea, you know, entering a guilty plea. Yeah. Well, there are principles of lenity that sometimes do apply. Do you think that concept should be applicable here? I mean, you know, the court and the totality of the circumstances can determine what it feels is equitable. And, you know, I think it's just hard to know, you know, in this case, like we have some facts that point towards, you know, periods of lucidity where the petitioner, you know, is, you know, able to understand and explain what's going on in the plea petition, you know, the plea colloquy with the circuit court. And there are other times, you know, where he seems like he can't remember to do basic tasks. But under the totality of circumstances, there are times when he's aware of what's going on and, you know, and he at least needed to—I don't think the district court erred, you know, by determining that petitioner did not introduce evidence throughout the whole, you know, throughout the whole course of the— We're not reviewing whether the district court erred. I think we have a separate responsibility to look at the totality of the circumstances they know of, correct? I mean, yes, except for to the extent there are factual determinations in this court. Do we have actual factual findings here that really close the door? I mean, I don't think so. I mean, I think the closest we come is there's some sort of — there's some sort of tension between, you know, what happened at the plea colloquy and what happened in the plea petition and what happened, you know, like in all of his declarations. Like there is some inherent tension about how lucid he is and how, you know, aware he is of what's going on. So to the extent that that tension causes, you know, an implicit factual finding, yeah, I think there is. I think that's what's troublesome. There was a time when there was no statute of limitations for a habeas petition that was changed with the deputy. Yeah, yeah. Yeah. I don't know if I have any other points to add at all. I'm happy to answer any other questions the Court may have. I think we're good. Okay. Thank you very much. Thank you, Counsel. Appreciate your argument. Thank you, Your Honors. I'd like to make a few brief points. The State said he simply has to ask for help. That's not really true. He first has to remember to ask for help, which is a major, major issue. But you do agree that the burden of proof is his to show diligence. I agree. And the district court was concerned that he simply had not met that burden. I agree. But I think this is very much like the case in Forbes where due to that person's mental impairment, they were incapable of showing due diligence. The only problem I have with your argument is the point that your opposing counsel just made, which is there's a fair amount of lucidity present in the record here that could only have come from Mr. Jacobs. The fact that he was able to recall that he told his lawyer to file a notice of appeal, that he called and wrote his attorney, but the attorney didn't respond. I mean, that could only have come from Mr. Jacobs, right? I agree, and that may be one of the fragments of memory that he retained. It doesn't mean that he's incapable of acting in a way that successfully allows him to file a habeas petition on time. I mean, it really took him remembering that he needed help, communicating that to another person. The other person had to offer help. The other person had to know what kind of help to offer, habeas, and then they had to follow through without any monitoring from Mr. Jacobs. Is there some reason why your investigator did not talk to his former defense attorney or ask for his file on the case? I don't know that. We may have his file, but I don't know the answer to that question. Wouldn't the file show, hopefully, any letters that Jacobs may have written or maybe even telephone messages that he'd called the office? It could. It could. I don't know why. But we just don't know? We don't know. Okay. All right. And then, just briefly, what I want to say is, you know, I think the inability of a man with this profound a brain injury to have the merits of his claims analyzed is the sort of core injustice that equitable tolling is designed to remedy. Thank you. Thank you. We appreciate both of your arguments very much. It's an important case. We'll take it under advisement.
judges: TALLMAN, CHRISTEN, Block